This is an appeal as a result of a felon in possession conviction and there are two issues we submit to the court as basis for the reversal of the case. The first is that the district court improperly deemed the jury verdict to be unanimous and did not give juror 11 an opportunity to clarify or explain his response during a polling of the jury ultimately, of course, could have led to the court deciding to declare mistrial or directing the jury to a new trial. The second is the admission of testimony about why, excuse me, why the police officers were in the area at the time shortly before Mr. Lowe was apprehended. We submit that that evidence was improperly admitted without a 404B analysis under the notion of complete the story evidence or complete the story evidence. As to the unanimous jury, there's no dispute that a defendant is entitled to a unanimous verdict. In this instance, during the polling, juror 11 responded to a yes or no question with yes, barely. The district court then asked for 11. You said yes. And the juror responded, affirming that that answer that was the only back and forth between the court and the juror. It could well be that the court didn't hear the juror's first answer, but if that's the case, the court did not phrase the question in that way. It's more likely we submit that what happened is the district court just glossed over or at the risk of being blunt, ignored the barely comment. We submit that the response yes, barely was an equivocal answer and that the court should have exercised discretion in inquiring further with the juror as to his agreement or disagreement with the with the verdict of guilty. The notion that the district court in a courtroom in federal court would ask a juror, you said yes, without, for example, a question of what you explain what you mean by yes, barely, or some other form of question or two. We further submit was coercive, not we're not contending it was intentionally coercive by the court as the parties recognize the question of coercion is evaluated from the perspective of the juror. The quick question by the district court, the fact that there was one other juror pulled after 11 in the manner. And by then, I mean, the single question by the district court all suggest, at least from your 11th perspective, the very real possibility, if not probability. He felt coerced into saying, yes, ultimately, while the court. Mr. Stuart, let me ask you one question on this. What's what's interesting about your 11 is your 11, if I'm not mistaken, is also trained as a lawyer. Correct. That's my understanding. Yes, you're right. And so why isn't the fairest construction of that answer? Yes, barely. That juror 11 is saying to the trial judge. Yeah, but I found it a tough and difficult close case. That is a fair interpretation, but not necessarily the most fair. And again, another question or two or a different question from the court could well have elicited that more definitive answer, in which case we might be in a different posture altogether. Instead, it's quite possible. Is it legally relevant in your view or relevant in our application of an abuse of discretion standard to take account of the fact that juror 11 is trained as a lawyer? Or should we not do that? I think it's appropriate in the context of perhaps considering the coercion aspect of the argument. Yes. Yeah. I mean, in other words, I think you're I think Mr. Lowe's argument is a lot better. I think you'd probably swap some cards in your hand. I can put it that way is if you take your number 11 and you make your number 11, a juror that was confused throughout the trial was asking questions of the trial judge, reflecting a real misunderstanding of what was happening. You know, et cetera, et cetera. But that's not juror 11 as the record comes to us. And so the like the likelihood that a barely comment from a juror that's also trained as a lawyer would reflect in the follow up. Yes. The answer would reflect coercion seems very low to me. That may well be the case if there was an indication that the district court had in mind that 11 was answering a question as a lawyer and not as a juror. There's no indication of that. And another. Yeah, yeah, I hear you. It's but I mean, it's it juror 11 is sitting throughout the trial with the legal right. It's hard for juror number 11 to say I'm going to leave my legal training outside the class outside the courtroom here altogether. And I don't disagree with that premise, Your Honor. Again, another question or two by the district court would leave us with a clear indication that that's exactly what your 11 meant. What should she have asked? What should she have done that wouldn't have amounted to coercion or wouldn't have been mounted to maybe even coercing juror number 12 to answering the question? Yes. If yes, in fact, wasn't juror number 12's verdict because she does ask the question again and he gives an unqualified yes. You sure? You know, that would be a little bit weird. I mean, if she said she has a verdict, yes. Are you sure? Are you sure? Yes. And again, you know, coming back to Judge Scudder's question and keep in mind, you know, you can look at it the other way. You know, the question of juror 11 being a lawyer is being asked by a judge, a question that while we sometimes disagree with judges' questions and answers them no, when we think the judge is looking for a yes, that may well have been part of the part of the process as well. I, you know, I believe that a question of repeat your answer or would you say again what your response is? And if the juror then says again, yes, barely a question from the judge, let's paraphrase. Let's talk about why you say barely. And if, as the judge indicated, the juror says, I'm a lawyer and what I meant was it just barely crossed the line and that's all I meant by barely, then we'd be in a much different situation, but that's not where we are. And ultimately, as the rules indicate, and both sides acknowledge, ultimately, the court could have declared a mistrial or at least sent the jury back for further deliberations. The second issue is the notion that why the police were in the area near where Mr. Lowe ended up being arrested was neither necessary or appropriate to the question of whether Mr. Lowe possessed a handgun. The court should have evaluated the case or that evidence under Rule 404B, did not conduct that analysis. I'm not going to claim to have a crystal ball to say that if that analysis had been conducted, the court would have reached a different decision, but that 404B analysis was not conducted. And what we have is a jury faced with knowledge that a shooting occurred and the very real chance, if not probability. Well, that's not quite right, I don't think. I think we have evidence that a gun was fired, but I think the evidence that a shooting occurred was kept from the jury. Is that right? No, Your Honor. In fact, the government quotes the instruction the district court gave and it refers to shooting rather than shots fired. But I mean, there was no evidence that was put in the record that someone was actually hit when the shots were fired, right? They didn't have a medical technician or something like that? There was no medical testimony. One of the officers... There was that one little mistake. Well, one officer did testify there for an aggravated battery involving a fire. Right. We would submit that the court have used its discretion both as to the jury polling and the handling of that evidence and that the appropriate remedy is to reverse Mr. Lowe's conviction and grant him a new trial so those errors can be avoided in a subsequent trial. Thank you. Reserve a bit more time, if permitted. Thank you, Counsel. Ms. Greenwald? Good morning, Your Honors. Jury 11's answer, yes, barely, did not call into question the unanimity of the verdict. The juror's answer indicated that, yes, the verdict is... As the district court actually found in its discretion, that the juror's answer indicated that, yes, the verdict is published, constituted his individual verdict, and that he added an editorial comment or his point of view regarding the sufficiency of the evidence. Namely, that the evidence was sufficient, albeit the minimum necessary to be sufficient. And this editorial comment stands in sharp contrast to instances where the court, this court, well, where other courts, this court hasn't really addressed this, but where courts in general have found the juror's answer to reveal a lack of unanimity within the meaning of Rule 31D. For example, it's my verdict, but I'm still in doubt. Yes, with a question mark. Yes, with reasonable doubt. In those cases, like this case, the jury answered yes. But what followed, that editorial comment or that comment that followed in these cases undermined, in these other cases, actually undermined the yes. Yes, barely didn't undermine the yes, yes, that's my verdict. It affirmed it, yes, that's my verdict, and this is the amount of evidence I found. Again, barely, but sufficient, which is what barely means. So it would be the government's position that that answer, which is, as the judge who heard the answer, heard the tone of it, saw the juror's demeanor, found wasn't it equivocal, didn't require anything that led into questioning the unanimity of the verdict. But even if it could be construed as in any way equivocal, the court's follow-up question was adequate and not coercive. Again, she repeated it, did you say yes? And yes, ma'am, I did, was the juror's answer. And there's no suggestion or reason from this record, as Judge Spoder noted, to suggest that this juror would be intimidated by, you know, be a lawyer or not, would lie to a court in saying, yes, that's my verdict. Is it relevant or not relevant, in your view, that juror number 11 just so happens to be a lawyer? It is the government's position that it does not rest on his profession. No, no, no, I know. That if any juror gave— It doesn't rest on that. Is it relevant or irrelevant? Not at all. It would be pretty much irrelevant in the government's position in the sense that any juror giving the answer, yes, barely, is an affirmation of the verdict that you have to take. But to the extent that we're now going to get into— —that he has not a clue what's going on in the trial. He's not processing the evidence, et cetera. And it just so happens that he's the one that says yes, barely. Would that background be relevant or irrelevant? Irrelevant to this comment. In other words, if you had a different comment, yes, barely is barely, yes, it's sufficient. I think we have to take the juror's words for what they mean. And that if any juror gave the answer yes, barely, barely means sufficient. Barely means, yeah, I met that deadline. Barely, I met the deadline. It means sufficient. And that you have to take the juror's statement for what it means, particularly when it's so assessed by the court that is there, that heard the comment, that saw the demeanor. Now, another comment that's less clear, yes, Your Honor, yes. Because that's when you get into whether an answer is equivocal. And yes, if this court were to find yes, barely to be equivocal, then yes, Your Honor, that would be relevant. But it's the government's position that— I'd really start to worry for a defendant if you had a juror that proved himself clueless during the trial and said yes, barely. I would be quite concerned for a defendant in a situation like that. Now, I understand what you're going to say. It's not the record you have here. It's not the fact pattern you have. It's not the record. And I guess I would also say, again, Judge, I guess it's the government's position here that yes, barely, barely is just not an equivocal answer. There could be—I totally agree with Your Honor and Your Honor's concern. With a juror like that, you know, there would be a concern. There could be other comments that they make that maybe isn't as clear as the examples I give you where they do find them to require further action by the court. And you had a juror like that, that yes, it would create concern. I guess the government—what I'm saying here is that this answer was just not equivocal, period, leaving out who said it. But there could be answers that are, and then who said it does become extremely relevant. And I would add, Your Honor, that, as you said, this isn't that case. This isn't that case at all. This juror didn't express those things. And I think the other point here that Judge Buckler was very cognizant of is—and when defense counsel says, well, you should have asked why you say barely— is Rule 606B under the Federal Rules of Evidence of not getting into a juror's rationale of what—of why the evidence was barely sufficient in this case. And the judge was cognizant of that as well in terms of her follow-up question and the narrowness of it. But overall, in comparing it to the cases where an answer was found equivocal or cases where the court's question was found to be coercive, this case does not come close to it on any counts. And there was nothing to indicate that the answer here was equivocal or the judge's treatment of it noncoercive. Moving to the 404B issue, the government did not offer this evidence. The court did not admit this evidence to complete the story. That's not what happened here. What happened here was offered for a non-propensity reason, a non-complete-the-story reason of specifically showing that the gun that was recovered from the dumpster could not have been in that dumpster for any period of time prior to the moment that the video captured the defendant throwing a gun-like object into that dumpster. That's what it was offered to show. That's how it was argued. That's how it was limited in its admission. And as your honors noted, the evidence that someone, in fact, was shot was not allowed in. The court gave a curative instruction. So while it was admitted as direct evidence, the analysis that both the government used and the court accepted, agreed with, was a 404B analysis in the sense of finding that it wasn't offered for any propensity reason. But isn't Mr. Stewart's point just a little bit different than that? Why is it essential that the jury—why not protect the defendant more than that? Why do they need to know they're responding to a shooting? Because you could—I think his point, and the way he's briefed it up quite ably, in my view, is that, look, it changes your perspective on a defendant. I think it's one thing to—you know, we got a kid with a gun. It's another thing if we got somebody with a gun that's been shooting it. And your honors, the government shared the concern, which is why we offered—and did not put any evidence that actually anybody was shot with the gun. However, the timing was important. In other words, without that timing, that the fire—that shots were fired and the moments before, those bullets could have been there, you know, for days before the bullets were covered. The gun could have been sitting in the dumpster for days before the object was thrown in. So it was that connection, your honor, that was important. Ms. Greenwald, there was no direct evidence in this case that the defendant possessed the gun. Is that right? It was all circumstantial? It was, particularly in the sense—well, we would say that the video was direct evidence. But the defense was, that wasn't me in the video, that the video was blurry. It didn't show what was being thrown into the dumpster. It didn't show it was me throwing it into the dumpster. Possession was the issue in this case, and the sole issue. They stipulated to everything else, to the operability of the gun, to the conviction. So the government is—totally shared the court's concern about not over-prejudicing this defendant and taking every effort to ensure that the case wasn't decided on any basis other than his possession of the gun, which is why the evidence was limited carefully. But the timing, that it was in response to those shots being fired then, as opposed to bullets lying there. You know, even because then, even if you put in that, you know, that this gun was just found. I see my time is up, but you take my point. So for these reasons, your honor, respectfully, for the reasons in our brief, we would ask that you affirm the defendant's conviction in sentence. Thank you, Ms. Greenwald. Mr. Stanton? Thank you. Just briefly, why the officers were there in conjunction—their testimony about why the officers were there in the context of a juror that says, yes, barely, indicates the huge impact that that evidence may have had on the jury. The evidence could well have been that the officers were there doing their job, conducting some sort of investigation without any reference to shots fired, and they found casings when they were in that area. With the court's indulgence, let me conclude with unanimity of the jury is so important that in this instance, a single question to Juror 11, you said barely. Why did you say barely? Not to get into the juror's reasoning or rationale, but to get clarity. We would have a much different situation. Thank you for your indulgence, and we again ask that the court grant Mr. Lowe a new trial. Thank you. Thanks to both counsel, and the case is taken under advisement.